FILED

2015 Sep-28  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SAN FRANCISCO RESIDENCE CLUB, INC.; THOMAS O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; ANNE O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; KATE LARKIN DONAHUE; GRANDVIEW CREDIT, L.L.C.,       Plaintiffs,       vs. | ) ) ) ) ) ) ) ) ) ) ) ) )   **CASE NO.  2:14-CV-1953-SLB** |
| LEADER, BULSO & NOLAN, P.L.C.; EUGENE N. BULSO,       Defendants. | ) ) ) ) ) |
| LEADER, BULSO & NOLAN, P.L.C.,       Counter Claimant,       vs. | ) ) ) ) ) ) ) |
| SAN FRANCISCO RESIDENCE CLUB, INC.; THOMAS O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; ANNE O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; KATE LARKIN DONAHUE; GRANDVIEW CREDIT, L.L.C.,       Counter Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Motion to Dismiss Count I of Complaint.  (Doc. 7.)[1]  Plaintiffs have sued defendants alleging breach of fiduciary duty, Count I, and violation of the Alabama Legal Services Liability Act [ALSLA], Count II, arising out of defendants' representation of plaintiffs in *San Francisco Residence Club v. Park Tower, LLC*, Case Number: 5:08-CV-1423-AKK [hereinafter *Park Tower* litigation].  (*See generally* doc. 1.)  Defendants ask the court to dismiss Count I of plaintiffs' Complaint "[b]ecause the remedy provided by the ALSLA is Plaintiffs' sole and exclusive remedy for Defendants' alleged breaches of duty as legal services providers."  (Doc. 7 ¶ 4.)  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss Count I of Complaint, (doc. 7), is due to be granted in part and denied in part.

## I. <u>MOTION TO DISMISS STANDARD</u>

Defendants have moved to dismiss Count I of plaintiffs' Complaint "pursuant to Fed. R. Civ. P. 12(b)(6)."  (Doc. 7 at 1.)  Rule 12(b) provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the [12(b)(6) defense of failure to state a claim upon which relief can be granted] by motion . . . .  A motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  However, the defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2).  Because this Motion to Dismiss was filed after

defendants filed their Answer, it is not a Motion to Dismiss "pursuant to Rule 12(b)(6)," (doc. 7 at

1); rather, it is properly considered a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ.

P. 12(c).

      Rule 12(c) provides, "After the pleadings are closed – but early enough not to delay trial –

a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the

pleadings is appropriate where there are no material facts in dispute and the moving party is entitled

to judgment as a matter of law.  In determining whether a party is entitled to judgment on the

pleadings, [the court must] accept as true all material facts alleged in the non-moving party's pleading,

and [it must] view those facts in the light most favorable to the non-moving party." *Perez v. Wells*

*Fargo N.A.*, No. 13-13853, 2014 WL 7229271, *4 (11th Cir. Dec. 18, 2014)(quoting *Cannon*

*v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)(citing *Hawthorne v. Mac*

*Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)))(internal quotations and citations

omitted).  "Judgment on the pleadings is proper when no issues of material fact exist and the moving

party is entitled to judgment as a matter of law based on the substance of the pleadings and any

judicially noticed facts."  *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965

(11th Cir. 2014)(internal citations and quotations omitted).

## II. <u>STATEMENT OF FACTS</u>

Plaintiffs' Complaint contains the following allegations of fact, which the court has accepted as true for purposes of deciding defendants' Motion to Dismiss/Motion for Judgment on the Pleadings:

9. [Defendants] represented Plaintiffs as their legal [counsel]. Due to the trust and confidence afforded [Defendants] by the Plaintiffs and at the recommendation of [Defendants], the representation was general and resulted in litigation in courts in Alabama, Hawaii and California . . . .

10. During the course of [Defendants'] representation of Plaintiffs, [Defendants] failed in *San Francisco Residence Club, Inc. et al v. Park Tower, LLC*, United States District Court, Northern District of Alabama, Case Number: 5:08-cv-01423-AKK ("Park Tower"), by, inter alia, failing to properly, timely and adequately disclose significant amounts of damages suffered by Plaintiffs. In fact, [Defendants,] unreasonably and without justification, objected to discovery requests regarding Plaintiffs' damages. The deficient disclosures and unreasonable objections were held to be in violation of the Federal Rules of Civil Procedure and as a result, the Court sanctioned [Defendants] and excluded millions of dollars of damages from Plaintiffs' recovery. [Defendants'] failure to follow the Rules of Civil Procedure failed to comply with the duty of care owed Plaintiffs. Plaintiffs relied upon [Defendants'] expertise as a legal service provider, to their detriment, and were damaged as a result.

11. Moreover, following the Order of the Court restricting Plaintiffs' damages in Park Tower, [Defendants] misled and did not properly advise Plaintiffs as to the impact of the Court's sanction Order, causing Plaintiffs to expend hundreds of thousands of dollars towards [Defendants'] inflated legal bills pursuing the litigation. [Defendants] misrepresented the status of the litigation and misrepresented to Plaintiffs that they had claims worth several millions of dollars despite [Defendants'] superior knowledge of the effect of the sanctions against [Defendants]. A reasonable lawyer under the circumstances would not have disguised or failed to properly advise Plaintiffs of the impact of the Court's sanction. Furthermore, [Defendants] failed to properly advise Plaintiffs of the conflict of interest created by the Court's Order.

12.     During the course of [Defendants'] representation of Plaintiffs, [Defendants] failed, to properly and adequately state causes of action on behalf of Plaintiff Grandview Credit, LLC, and to join Plaintiff Grandview Credit, LLC, in causes of action [Defendants] pursued for other Plaintiffs in that action, causing dismissal of all of Grandview Credit, LLC's claims.  Defendants' failure to properly assert claims on behalf of Grandview Credit, LLC, along with other improper actions and/or omissions listed herein, was unreasonable.  [Defendants] did not exercise the reasonable care and skill as would have been exercised by an attorney in the location and area involved.  Grandview Credit, LLC, relied on Defendants' touted abilities as legal service providers, to their detriment, and Plaintiffs were damaged as a result.

13.     During the course of [Defendants'] representation of Plaintiffs, [Defendants] overcharged Plaintiffs for services and, upon information and belief, billed Plaintiffs for time that was not spent, reasonable, necessary or authorized. Within a twenty-four month period, Bulso and one associate charged Plaintiffs nearly $2,000,000 (some minor charges were allegedly incurred by a few other lawyers or staff).  [Defendants] represented to Plaintiffs that Plaintiffs' claims were worth the funds charged, plus millions, yet after millions of dollars were billed and paid to [Defendants], [they] abandoned Plaintiffs and recommended Plaintiffs settle for "whatever amount they could get," even suggesting Plaintiffs accept $150,000 in full and final settlement.  With full knowledge of the sanctions and failures listed above, [Defendants] concealed the true status of the cases with the intention of billing Plaintiffs as much money as they could afford to borrow or pay.  Bulso put his interest before the interest of his clients, thereby breaching the duty of loyalty.  After misrepresenting to Plaintiffs the events caused by Bulso that weakened their cases, [Defendants] simply walked away and sought liens against any funds Plaintiffs might achieve.  Defendants acted in their own best interests rather than representing the [interests] of Plaintiffs.

14.     [Defendants] also improperly asserted liens in federal court in Alabama, for services performed outside of Alabama and for which [Defendants have] no right to a lien.[2]  [Defendants] also improperly asserted a lien on money far in excess what was even allegedly owed by each and/or certain Plaintiffs.

. . .

_____

[2] *See San Francisco Residence Club, Inc., v. Park Tower, LLC*, Case No. 5:08-CV-1423-AKK, doc. 292.

5

16.   [Defendants were] Plaintiff's fiduciar[ies] and thereby owed a duty of care and loyalty to Plaintiffs as Plaintiffs' counsel. . . . [Defendants'] breaches of duty *in Alabama* are set forth under the Alabama Legal Services Liability Act.

(Doc. 1 ¶¶ 9-14, 16 [footnote added].)

## III.  <u>DISCUSSION</u>

Defendants argue, "The Complaint asserts two legal claims arising out of [the] alleged breaches of duty:  breach of fiduciary duty (Count I) and violation of the ALSLA (Count II).  [(Doc. 1 at 7, 8.)]  Because the remedy provided by the ALSLA is Plaintiffs' sole and exclusive remedy for Defendants' alleged breaches of duty as legal services providers, Count I of the complaint should be dismissed."  (Doc. 7 ¶ 4.)  Plaintiffs contend, "Discovery is necessary to assure Plaintiffs do not inadvertently waive their right to pursue claims that are discovered to have arisen from services provided outside of Alabama or if it is discovered that Defendants duties arose from the common law, rather than from Defendants' representation of Plaintiffs in Alabama."  (Doc. 10 ¶ 3.) Therefore, they state, "If discovery reveals that Plaintiffs['] breach of fiduciary duty claims arise entirely from Defendants' failure to meet the stand[ard] of care while performing legal services in Alabama, the same claims are merely encompassed within the [ALSLA] and dismissal of Count[ ] I . . . is a mere technicality without any substantive effect."  (*Id*. ¶ 5.)

According to the Alabama Supreme Court:

Section 6-5-573, Ala. Code 1975, [ALSLA] provides:  "There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."

6

Section 6-5-572(2), Ala. Code 1975, defines a "legal service provider" as

"[a]nyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations, associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers."

Section 6-5-572(1), Ala. Code 1975, defines "legal service liability action" as

"[a]ny action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damage[ ] or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."

*Roberts v. Lanier*, 72 So. 3d 1174, 1180-81 (Ala. 2011).

"The [ALSLA] is very broad. It creates one form of action against any 'legal service provider' and exclusively governs any and all actions brought against a legal service provider for damages. [It] embraces all claims, based on either contract or tort, and supersedes any inconsistent provisions of the law." *Mississippi Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 217 (Ala. 1997)(Bryan, Special Justice, concurring in the result). However, the definition of legal services provider is limited. The Alabama Supreme Court has held, "The plain language of § 6-5-572(2), as

7

well as that of the other portions of the ALSLA, clearly indicates that the Legislature intended for the ALSLA to apply only to lawyers and to entities that are composed of members who are licensed to practice law within the State of Alabama." *Alabama Educ. Ass'n v. Nelson*, 770 So. 2d 1057, 1059 (Ala. 2000). Also, an attorney not licensed to practice law in Alabama, but associated with an Alabama attorney, may "meet[ ] that part of the definition of a 'legal service provider' that includes 'the persons, firms, or corporations either employed by or performing work or services *for the benefit of* such professional corporations, associations, and partnerships . . . ,'" if the relationship between the foreign attorney or firm and the Alabama attorney or firm constitutes a joint venture. *Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.*, 42 So. 3d 667, 678 (Ala. 2009)(citing 46 Am. Jur. 2d *Joint Ventures* § 50 (2006))(emphasis in *Wachovia Bank*). Moreover, the ALSLA covers claims encompassing legal services provided by an attorney while admitted pro hac vice. *See Lanier*, 72 So. 3d at 1183 n.6 ("It seems clear that, after he obtained pro hac vice status, [defendant, a foreign attorney,] qualified as a 'legal-service provider' under the ALSLA.") Alabama has declined to decide whether "claims aris[ing] out of alleged misconduct that is said to have occurred *before* [a foreign attorney] obtained [pro hac vice] status," are subject to the ALSLA. *Id.* And, this court has found no case discussing the applicability of the ALSLA to a legal-services liability action based on a breach of the standard of care arising after a foreign legal services provider has withdrawn from his representation in an Alabama proceeding in which they were granted pro hac vice status. Given the Alabama courts' holding limiting the application of the

ALSLA with regard to foreign attorneys, the court finds that the ALSLA does not apply to claims against a foreign attorney or firm, not working for the benefit of a licensed Alabama attorney, based on acts or omissions occurring before or after the foreign attorney's pro hac vice representation of his client in an Alabama proceeding.

Defendant Bulso is an attorney licensed to practice law in Tennessee. He and Steven Nieters, both attorneys with defendant Leader, Bulso & Nolan, were admitted pro hac vice on February 24, 2009, in the *Park Tower* litigation. *See Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 43. On October 28, 2011, Bulso and Nieters moved to withdraw from both the *Park Tower* and the *Baswell-Guthrie* cases; their motions were granted on November 3, 2011. *See Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 291 and stamp ruling of November 3, 2011; *Baswell-Guthrie*, Case No. 5:09-CV-0421-CLS, doc. 177 and stamp ruling of November 3, 2011.

Therefore, the court finds that defendants' Motion to Dismiss/Motion for Judgment on the Pleadings,(doc. 7), will be granted in part and denied in part. Defendants' Motion to Dismiss Count I will be granted as to claims based on defendants' alleged wrongdoing arising out of the attorney/client relationship during the time defendants appeared in this court pro hac vice and will be denied as to claims based on wrongdoing arising out of the attorney/client relationship before defendants appeared in this court pro hac vice and after they withdrew from representing the plaintiffs in the *Park Tower* litigation.

9

**DONE** this 28th day of September, 2015.

SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE