# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **SAN FRANCISCO RESIDENCE CLUB, INC.**, *et al.*, | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | **Case Nos.: 2:14-CV-1953-KOB** |
| **v.** | ] | **2:14-CV-1954-KOB** |
| | ] | **2:14-CV-1955-KOB** |
| **LEADER, BULSO & NOLAN, PLC**, *et al.*, | ] | |
| | ] | **This Document Relates to All Cases** |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

This legal malpractice matter comes before the court on Defendants Leader, Bulso & Nolan and Eugene Bulso's (collectively "LBN") motions for partial summary judgment in these three consolidated cases. (2:14-cv-1953-KOB, Doc. 118; 2-14-cv-1954-KOB, Docs. 117, 120; 2-14-cv-1955-KOB, Doc. 116).

These claims trace their origins to Alabama real estate investments Plaintiffs made in the 2000s. LBN represented Plaintiffs San Francisco Residence Club, Inc., Thomas O'Shea, Anne Donahue O'Shea, Kate Larkin Donahue, and Grandview Credit, LLC in lawsuits in Alabama arising out of these real estate transactions. Plaintiffs allege that LBN committed legal malpractice in the course of its representation by failing to timely supplement Plaintiffs' Rule 26 damages disclosures in one case, negligently drafting a settlement agreement in that same

case, and overbilling in all matters. LBN argues that the statute of limitations bars most of Plaintiffs' claims, which is the basis of its motions for partial summary judgment.

As discussed below, the court WILL DENY IN PART and WILL GRANT IN PART LBN's motions for partial summary judgment. First, the statute of limitations does not bar Plaintiffs' claims concerning LBN's untimely supplementation. The two-year limitations period was tolled until Plaintiffs discovered LBN's failure to timely supplement Plaintiffs' Rule 26 damages disclosures; Plaintiffs then timely brought suit within two years of discovery. And the statute of limitations does not restrict Plaintiffs' overbilling claims to invoices issued within the two years before this lawsuit began; the court needs more information on these particular claims, because depending on when Plaintiffs discovered or should have discovered the overbilling, Plaintiffs may bring claims for overbilling in invoices issued up to four years before this lawsuit. But the statute of limitations bars Plaintiffs' claims concerning the drafting of the settlement agreement.

## I.    STANDARD OF REVIEW

When considering a motion for summary judgment, the court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram*

*Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). The court must decide whether "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not all factual disputes defeat a motion for summary judgment. "'Genuine disputes [of material fact] are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record.'" *Evans v. Books-A-Million*, 762 F.3d 1288, 1294 (11th Cir. 2014) (alteration in original) (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)).

For this motion, the parties primarily raise questions of law as applied to the facts. The court accordingly devotes the majority of this memorandum opinion to resolving purely legal issues. But Plaintiffs contend that genuine issues of material fact exist as to Plaintiffs' negligent drafting and equitable tolling claims, and so the court will also address the purported factual disputes as to those claims.

## II.    BACKGROUND

Based on a request from the Special Master overseeing the mediation of this complex legal dispute, the court instructed the parties to file initial dispositive motions only on the statute of limitations issue. (Doc. 117).[1] Accordingly, the court presents only facts relevant to understanding the statute of limitations issue.

---

[1] Record citations without a case name or number refer to docket entries in the lead case, 2:14-cv-01953-KOB.

A.    The Underlying Lawsuits

LBN represented Plaintiffs in several lawsuits arising out of botched real estate transactions in Huntsville, Alabama.  Plaintiffs sued, among other defendants, Wilmer & Lee, P.A., the law firm that acted as escrow agent for the purchase of commercial property called Park Tower, and Scott McDermott, a residential real estate agent.  *San Francisco Residence Club, Inc., et al. v. Park Tower, LLC, et al.*, No. 5:08-cv-01423-AKK (N.D. Ala. Aug. 8, 2008) (the "Park Tower" case).

In a separate action, Plaintiffs sued Wilmer & Lee and Mr. McDermott for allegedly mishandling the purchase of additional properties called Moquin, Fountain, and Corporate Drive.  *San Francisco Residence Club, Inc., et al. v. Baswell-Guthrie, et al.*, No. 5:09-cv-00421-CLS (N.D. Ala. Mar. 3, 2009) (the "Baswell-Guthrie" case).

While representing Plaintiffs in both cases, LBN billed Plaintiffs monthly for work on both cases.  (*See* Docs. 131-1, 131-4).  In the monthly invoices, LBN provided an itemized list of services performed, timekeeping records, amounts due for services and disbursements, and total balance due.

On July 13, 2010, Plaintiffs entered into a pro tanto settlement agreement with Mr. McDermott and his associates in the Park Tower case, after which Wilmer & Lee remained as a defendant.  (Doc. 22-5).  Pursuant to the settlement

agreement, Plaintiffs obtained title to Park Tower.  Defendant Eugene Bulso

drafted the final settlement agreement.  (Doc. 124-2 at 3-4).  A prior negotiating

paper for the settlement agreement contained a provision holding the McDermott

defendants personally liable for Park Tower's obligations.  The final settlement

agreement signed on July 13, 2010 did not contain that provision.  For purposes of

this motion only, the court will assume that the omission of personal liability was a

drafting error and did not accurately reflect the negotiated agreement.

On September 27, 2010, in the Park Tower case, Judge Abdul Kallon

ordered Plaintiffs to "supplement their prior disclosures regarding damages" by

October 11, 2010 in light of the settlement agreement with some, but not all

defendants in that case.  (Park Tower, Doc. 242 at 2).  On October 11, 2010, LBN

filed supplemental Rule 26 damages disclosures in which LBN divulged for the

first time that Plaintiffs sought to recover loss of value and loss of income damages

for the three years during which the McDermott defendants owned and operated

Park Tower.  (Park Tower, Doc. 246-1 at 2).

On October 15, 2010, Wilmer & Lee asked the court to strike the loss of

value and loss of income categories of damages from the supplemental Rule 26

disclosures.  (Park Tower, Doc. 246).  Wilmer & Lee argued that defending against

new damage claims would impose severe and unreasonable financial burdens.  On

March 31, 2011, Judge Kallon found that Plaintiffs had no substantial justification

to assert new categories of damages so late in the proceedings and that re-opening

discovery for those claims would harm Wilmer & Lee. (Park Tower, Doc. 262 at

9-10). Accordingly, pursuant to Rule 37(c)(1) of the Federal Rules of Civil

Procedure, Judge Kallon precluded Plaintiffs from pursuing loss of value and loss

of income damages against Wilmer & Lee.

B.    The Current Actions

On October 26, 2012, Plaintiffs filed a complaint bringing malpractice and

several other claims against LBN in the Superior Court of California in Marin

County. (2:13-cv-00951-SLB, Doc. 1 at 1-2, 13-17). Plaintiffs did not serve

process on LBN. On January 29, 2013, Plaintiffs filed an amended complaint in

the Superior Court and served process on LBN the same day. (*Id.* at 2).

On February 25, 2013, LBN removed the state court action to the United

States District Court for the Northern District of California. (2:13-cv-00951-SLB,

Doc. 1 at 1). On May 14, 2013, the district court transferred the case to the

Northern District of Alabama. (2:13-cv-00951-SLB, Doc. 14). On September 8,

2014, Judge Sharon Blackburn ordered Plaintiffs to replead and refile their

underlying claims as separate actions, each of which would relate back to the filing

date of Plaintiffs' original complaint. (2:13-cv-00951-SLB, Doc. 44 at 2).

On October 10, 2014, Plaintiffs filed three separate actions: (1) *San*

*Francisco Residence Club, Inc., et al. v. Leader, Bulso & Nolan, PLC, et al.*, 2:14-

cv-01953, bringing malpractice claims related to the Park Tower case; (2) *San Francisco Residence Club, Inc., et al. v. Leader, Bulso & Nolan, PLC, et al.*, 2:14-cv-01954, bringing malpractice claims related to the Baswell-Guthrie case; and (3) *O'Shea, et al. v. Leader, Bulso & Nolan, PLC, et al.*, 2:14-cv-01955, bringing elder abuse claims under California law. Those three cases later were reassigned to the undersigned judge. Because the cases involve a common question of law or fact, the court consolidated the three cases. (Doc. 45).

Among other contentions, Plaintiffs allege that LBN violated the Alabama Legal Services Liability Act, Ala. Code § 6-5-570, *et seq.* ("ALSLA"), by failing to timely supplement Plaintiffs' Rule 26 damages disclosures in the Park Tower case, which Plaintiffs contend cost them millions of dollars of damages, and by overbilling Plaintiffs for unnecessary and unreasonable legal services. (Doc. 1 at ¶¶ 10-11, 13). The court presumes that Plaintiffs allege also that LBN negligently drafted the July 13, 2010 pro tanto settlement agreement in the Park Tower case, which did not hold the McDermott defendants personally liable for Park Tower's obligations.[2]

The court appointed James Pratt to serve as a Special Master in this action

---

[2] The court cannot locate any pleading in which Plaintiffs claim that LBN negligently drafted a settlement agreement. The claim seems to arise from an expert witness report challenging LBN's drafting and a line of questioning at the deposition of an LBN attorney. (Doc. 120-3 at ¶ 13; Doc. 124-2 at 2-4). Nevertheless, the parties have fully briefed the issue as if Plaintiffs had pled the claim, and so in an abundance of caution—and for the purposes of this motion only—the court will consider the timeliness of any negligent drafting aspect of Plaintiffs' ALSLA claims.

and stayed the case pending mediation. (Doc. 113 at 1-2). On March 20, 2018, based on a request from the Special Master, the court lifted the stay in this case only to allow the parties to file partial summary judgment motions on the statute of limitations issue. (Doc. 117).

LBN moved for partial summary judgment based on the ALSLA statute of limitations. (Doc. 118). LBN argues that the statute of limitations bars all of Plaintiffs' ALSLA claims as they relate to the supplemental Rule 26 damages disclosures and negligent drafting. Also, LBN argues that the statute of limitations restricts Plaintiffs' overbilling claims to invoices issued to Plaintiffs within the two years prior to this lawsuit.

With this background in mind, the court will analyze the timeliness of Plaintiffs' ALSLA claims.

## III.    DISCUSSION

### A.    Commencement Date

The court must first determine when Plaintiffs began this action for statute of limitations purposes; that is, when they filed the complaint with "a bona fide intent to have it immediately served." *Dunnam v. Ovbiagele*, 814 So. 2d 232, 238 (Ala. 2001).[3] Plaintiffs filed their original complaint in Marin County, California

---

[3] Although Plaintiffs filed their original complaint in California state court, Plaintiffs bring their malpractice claims specifically under the ALSLA. Plaintiffs' claims are therefore subject to the ALSLA's statute of limitations and the law is clear that an ALSLA action is

on October 26, 2012, but did not serve LBN until they amended their complaint on January 29, 2013.  (2:13-cv-00951-SLB, Doc. 1 at 1-2).  The record contains no evidence of Plaintiffs' effort or intent to serve LBN before January 29, 2013.  Therefore, the court finds that Plaintiffs began this action for statute of limitations purposes on January 29, 2013.

      B.      <u>Statute of Limitations</u>

The ALSLA statute of limitations provides that "[a]ll legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards."  Ala. Code § 6-5-574(a).  The statute also provides a "savings clause":  if a plaintiff does not discover or could not reasonably have discovered the cause of action within two years after the "act or omission or failure" giving rise to the claim, "then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier."  *Id.*  But the statute also places an absolute four-year bar on any claim.  Even if the plaintiff did not or could not discover the cause of action within two years, "in no event may the action be commenced more than four years after such act or omission or failure."  *Id.*

---

commenced for purposes of the ALSLA statute of limitations when the complaint is filed with a bona fide intent to have it immediately served.  *See ENT Assocs. of Alabama, P.A. v. Hoke*, 223 So. 3d 209, 214 (Ala. 2016).

Before deciding when the statute of limitations clock ran out, the court first must decide when it began to tick. Not surprising, the parties dispute when the two-year limitations period begins to run. Plaintiffs argue that Alabama follows the so-called "injury rule" and the limitations period begins to run when a plaintiff suffers actual injury from a lawyer's malpractice. LBN, on the other hand, argues that Alabama follows the so-called "occurrence rule" and the limitations period begins to run when a lawyer commits the "act or omission or failure" giving rise to the malpractice claim, regardless of when a plaintiff sustains injury.

But both parties are correct—at least to some degree. The parties' dispute arises out of confusing Alabama Supreme Court precedent. The Alabama Supreme Court has recognized both the injury rule and the occurrence rule as triggers to start the statute of limitations. Initially, the Alabama Supreme Court followed the injury rule, pursuant to which the statute of limitations begins to run when the plaintiff suffers "damages" or a "legal injury" from the alleged malpractice. *Mississippi Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 213 (Ala. 1997); *Cantrell v. Stewart*, 628 So. 2d 543, 545 (Ala. 1993); *Michael v. Beasley*, 583 So. 2d 245, 252 (Ala. 1991).

Then, the Alabama Supreme Court changed horses and adopted the occurrence rule, pursuant to which "a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when 'the act or omission or

failure giving rise to the claim' occurs, and not when the client first suffers actual damage." *Ex parte Panell*, 756 So. 2d 862, 868 (Ala. 1999) (plurality opinion) (footnote omitted) (quoting Ala. Code § 6-5-574(a)).

Since *Panell*, the Alabama Supreme Court has sometimes applied the occurrence rule and sometimes used the injury rule, but it has never explained how to decide which trigger to use.

For example, the Alabama Supreme Court applied the *Panell* occurrence rule in *Ex parte Seabol*, 782 So. 2d 212, 214 (Ala. 2000) and *Dennis v. Northcutt*, 887 So. 2d 219, 221 (Ala. 2004). But the Alabama Supreme Court still applied the injury rule in three cases decided after *Panell*: *Price v. Ragland*, 966 So. 2d 246, 259 (Ala. 2007); *Wesson v. McCleave, Roberts, Shields & Green, P.C.*, 810 So. 2d 652, 658-59 (Ala. 2001); *Sirote & Permutt, P.C. v. Bennett*, 776 So. 2d 40, 44-45 (Ala. 2000). And in multiple opinions, the Alabama Supreme Court declined to elect between the occurrence rule and the injury rule because both triggers produced the same result. *See Coilplus-Alabama, Inc. v. Vann*, 53 So. 3d 898, 906 (Ala. 2010); *Denbo v. DeBray*, 968 So. 2d 983, 991 (Ala. 2006); *Floyd v. Massey & Stotser, P.C.*, 807 So. 2d 508, 511 (Ala. 2001).

Although the Alabama Supreme Court has not established conclusively which rule governs under what circumstances, the Court articulated clearly that a discovery and tolling principle applies to the ALSLA statute of limitations: "the

11

running of the limitations period is tolled until the client discovers, or reasonably should discover, the attorney's act or omission or failure." *Seabol*, 782 So. 2d at 214.

Case law demonstrates how this discovery and tolling principle coexists with the ALSLA's two-year limitations period, six-month savings period, and absolute four-year bar. In *Seabol*, in which the Alabama Supreme Court applied the occurrence rule, the plaintiff discovered the occurrence more than two years later, but within the four-year bar. A genuine dispute existed as to whether the plaintiff should have discovered the occurrence at an earlier time. *Seabol*, 782 So. 2d at 216. If the plaintiff should have discovered the occurrence within two years, then the ALSLA savings clause would not apply, but if the plaintiff could not have discovered the occurrence within two years, then the plaintiff could bring his claim within six months of discovery under the savings clause. The Alabama Supreme Court remanded the case for the trial court to determine when the plaintiff should have discovered the occurrence. *Id.* at 216-17.

In *Denbo*, the absolute four-year bar precluded the plaintiff's claims because he discovered both the occurrence and the injury more than four years after the trigger of the statute of limitations under either approach. 968 So. 2d at 990. In *Vann*, the plaintiff discovered the occurrence and the injury more than two years later and could not have discovered the occurrence and injury at any earlier time.

But because the plaintiff brought his claim more than six months after discovery, the savings clause could not save the day and his claim was time-barred. *Vann*, 53 So. 3d at 906-07. And in *Floyd*, the plaintiff brought suit more than two years after he discovered the occurrence and the injury, so neither tolling nor the savings clause could save his claim. 807 So. 2d at 511-12.

As in *Denbo*, *Vann*, and *Floyd*, the court does not need to decide whether the occurrence rule or the injury rule governs under Alabama law. As discussed below, both rules produce the same outcome in this case: Plaintiffs timely brought their claim that LBN failed to timely supplement Plaintiffs' Rule 26 disclosures, Plaintiffs are not limited to claims of overbilling in invoices issued during the two years prior to this lawsuit, and Plaintiffs' claim of negligent drafting is time-barred.

### 1. *Claim Arising From Supplemental Rule 26 Disclosures*

Plaintiffs first allege that LBN committed malpractice by failing to timely supplement their Rule 26 damages disclosures in the Park Tower case. So the "act or omission or failure" occurred sometime before October 11, 2010 (when LBN filed the supplement), more than two years before Plaintiffs began this action.

However, Plaintiffs did not and could not discover the occurrence until March 31, 2011. On that day, Judge Kallon decided that the October 11, 2010 supplement came too late. Before Judge Kallon's order, Plaintiffs could not have known that the time to assert new categories of damages had passed—the Federal

Rules of Civil Procedure do not set a firm deadline on supplementation and LBN

actually complied with Judge Kallon's order to supplement on or before October

11, 2010. *See* Fed. R. Civ. P. 26(e)(1)(A) (a party must supplement its Rule 26

disclosures "in a timely manner"); (Park Tower, Doc. 242 at 2) ("Plaintiffs should

supplement their prior disclosures by October 11, 2010."). Plaintiffs simply could

not have known that LBN did not timely add new categories of damages until

Judge Kallon made that finding.

So, pursuant to *Seabol*, the two-year limitations period did not begin to run

until discovery of the failure on March 31, 2011. *See Seabol*, 782 So. 2d at 214

("[T]he running of the limitations period is tolled until the client discovers, or

reasonably should discover, the attorney's act or omission or failure."). Plaintiffs

timely brought suit on this claim less than two years later on January 29, 2013.

The injury rule produces the same result. Plaintiffs suffered injury on March

31, 2011 when, because of LBN's failure to timely supplement Plaintiffs' Rule 26

damages disclosures, the court blocked Plaintiffs from pursuing several million

dollars in loss of value and loss of income damages. Again, Plaintiffs timely

brought suit within two years of suffering injury.

Therefore, the ALSLA statute of limitations does not bar Plaintiffs' claims

as they relate to LBN's failure to timely supplement Plaintiffs' Rule 26 damages

disclosures in the Park Tower case and the court will deny LBN's motions for

partial summary judgment as to those claims.

## 2. *Overbilling*

The court next addresses Plaintiffs' claims that LBN overbilled them in several invoices issued for work done in the Park Tower and Baswell-Guthrie cases. Plaintiffs first argue that their overbilling claims are compulsory or permissive counterclaims to LBN's attorneys' fee liens asserted in the Park Tower and Baswell-Guthrie cases and thus exempt from the ALSLA statute of limitations. (Doc. 123-1 at 33-36). On October 28, 2011, in both the Park Tower case and the Baswell-Guthrie case, LBN filed a "Notice of Attorneys Lien" which stated, "[t]he undersigned hereby serves notice that, pursuant to Ala. Code 1975 § 34-3-61(d), it has a lien upon any money or property recovered in this action. In accordance with Section 34-3-61(b), 'no person shall be at liberty to satisfy the action or judgment, until the lien or claim of the attorney . . . is fully satisfied.'" (Park Tower, Doc. 292; Baswell-Guthrie, Doc. 177).

But under Alabama law, LBN's attorneys' fee liens attached only to property recovered in the Park Tower and Baswell-Guthrie cases and did not establish a cause of action against Plaintiffs personally. *See* Ala. Code § 34-3-61(c); *Boykin Timber & Farm Res., Inc. v. Nix*, 438 So. 2d 294, 296 (Ala. 1983). And Plaintiffs offer no authority for the proposition that a stand-alone legal malpractice action is a counterclaim to an attorney's security interest on settlement

15

proceeds recovered in a separate lawsuit. Despite Plaintiffs' attempt to reclassify their claims, Plaintiffs' overbilling claims are stand-alone malpractice claims subject to the malpractice statute of limitations.

The court must next determine when the clock started to run for Plaintiffs' overbilling claims. Assuming that LBN overbilled Plaintiffs, the overbilling occurred each time LBN issued an inflated invoice. If LBN issued inflated invoices, then Plaintiffs suffered injury and a cause of action accrued with each invoice, because with each invoice Plaintiffs had to pay allegedly unreasonable fees. The "occurrence" and the "injury" happened simultaneously, and so the occurrence rule and the injury rule will produce the same result.

But Plaintiffs suggest that they discovered overbilling in invoices at some point after LBN issued the invoices and so the two-year limitations period should not begin to run until that discovery. (*See* Doc. 123-1 at 3, 5, 37-38). The times when Plaintiffs discovered overbilling and the times when Plaintiffs should have discovered overbilling can affect the timeliness of their claims, and so the court will describe which circumstances give rise to a timely overbilling claim.

Regardless of when Plaintiffs discovered any overbilling, because of the ALSLA's absolute four-year bar, Plaintiffs may not bring claims for overbilling in invoices issued more than four years before January 29, 2013. And also regardless of when Plaintiffs discovered any overbilling, Plaintiffs may bring claims for

overbilling in invoices issued within the ALSLA's standard two-year limitations period before January 29, 2013.  So invoices issued before January 29, 2009 are untimely, while invoices issued after January 29, 2011 are timely.  The trouble lies with invoices issued between January 30, 2009 and January 28, 2011.

The ALSLA's six-month savings period and evidence of when Plaintiffs discovered and should have discovered overbilling comes into play for invoices issued between January 30, 2009 and January 28, 2011.  For these invoices, if Plaintiffs discovered the overbilling within two years of the invoice date, and Plaintiffs could not have reasonably discovered the overbilling at an earlier time, then the two-year limitations period was tolled until discovery and Plaintiffs could bring suit within two years of discovery.  If Plaintiffs discovered the overbilling more than two years after the invoice date, and Plaintiffs could not have reasonably discovered the overbilling at an earlier time, then Plaintiffs could bring claims for overbilling within six months.  In no circumstance may Plaintiffs bring an overbilling claim more than four years after the invoice date or more than two years after they discovered or should have discovered overbilling in an invoice.

This framework demonstrates that the timeliness of Plaintiffs' overbilling claims for invoices issued between January 30, 2009 and January 28, 2011depends on when Plaintiffs discovered each instance of supposed overbilling, and so the court will deny LBN's motions for partial summary judgment on Plaintiffs' claims

of overbilling in invoices issued between January 30, 2009 and January 28, 2011.

### 3. *Negligent Drafting of the Settlement Agreement*

The statute of limitations applies straightforwardly to Plaintiffs' negligent drafting claim. Plaintiffs allege that LBN negligently failed to include a provision holding the McDermott defendants personally liable for Park Tower's obligations in the pro tanto settlement agreement executed on July 13, 2010 in the Park Tower case. Therefore, LBN's "act or omission or failure" for ALSLA purposes occurred on July 13, 2010. Plaintiffs suffered injury the same day, because at that point they acquired title to property encumbered by several unwanted obligations. Again, the "occurrence" and the "injury" happened simultaneously and so the occurrence rule and the injury rule will produce the same result.

Plaintiffs signed the settlement agreement on July 13, 2010. Plaintiffs should have discovered on that day or shortly thereafter that the retained liability provision was missing. Plaintiffs offered no evidence showing that they somehow could not discover the deficiency until some later time. Plaintiffs brought suit more than two years later on January 29, 2013 and so the statute of limitations bars their negligent drafting claim. Again, the court assumes the Complaint states such a claim.

### C. Equitable Tolling

Plaintiffs argue finally that genuine issues of material fact exist as to

whether equitable tolling preserves their claims. (Doc. 123 at ¶ 4; Doc. 123-1 at 5-6, 20, 36-38). Plaintiffs' evidence offered to show equitable tolling relates primarily to Plaintiffs' claim that LBN failed to timely supplement Plaintiffs' Rule 26 damages disclosures. (*See* Doc. 124-3 at ¶¶ 7, 9; Doc. 124-6). The court has already found that Plaintiffs timely brought that claim within two years of discovery, so Plaintiffs do not need to rely on equitable tolling for that claim.

Plaintiffs then cite to John Donahue's deposition as evidence to support their claim of equitable tolling of the overbilling claims, even those invoices issued more than four years before this lawsuit. (Doc. 123-1 at 6; Doc. 138 at 14). Mr. Donahue testified that Mr. Bulso told him that LBN would no longer represent Plaintiffs and that LBN agreed to continue representing Plaintiffs only after Plaintiffs paid substantially more money. (Doc. 124-1 at 2-5). According to Plaintiffs, Mr. Donahue's deposition "establish[es] that Bulso represented to Plaintiffs in February 2011 that he would see their cases through trial if Plaintiffs paid $200,000 towards the deferred fees (fees exceeding the mere $50,000 per month Bulso agreed to accept)." (Doc. 138 at 14). Mr. Donahue's testimony may concern the reasonableness of LBN's fees, but it does not suggest any circumstances that would have prevented Plaintiffs from discovering overbilling. Therefore, Mr. Donahue's testimony has no bearing on the timeliness of Plaintiffs' overbilling claims.

And finally, as to Plaintiffs' negligent drafting claim, Plaintiffs cite only an excerpt of Steven Nieter's deposition as evidence to support equitable tolling. (Doc. 123-1 at 20). At his deposition, Mr. Nieter testified that he did not know why Mr. Bulso did not include a provision holding the McDermott defendants personally liable for Park Tower's obligations in the settlement agreement with the McDermott defendants in the Park Tower case. (Doc. 124-2 at 2-4). This testimony falls short of showing relation to any circumstances that would have tolled the statute of limitations. Thus, Plaintiffs fail to establish any basis for equitable tolling and the statute of limitations bars the claims involving the settlement agreement.

## IV.    CONCLUSION

By separate order, the court **WILL DENY IN PART** and **WILL GRANT IN PART** LBN's motions for partial summary judgment. The statute of limitations does not bar Plaintiffs' ALSLA claims involving LBN's failure to timely supplement Plaintiffs' Rule 26 damages disclosures in the Park Tower case. (2:14-cv-1953-KOB, Doc. 118 at 2; 2:14-cv-1954-KOB, Doc. 117 at 2; 2:14-cv-1955-KOB, Doc. 116 at 2). The statute of limitations does not restrict Plaintiffs' overbilling claims to invoices issued within the two years before January 29, 2013. (2:14-cv-1953-KOB, Doc. 118 at 3; 2:14-cv-1954-KOB, Doc. 117 at 2, Doc. 120 at 2; 2:14-cv-1955-KOB, Doc. 116 at 3). Depending on when Plaintiffs discovered

and should have discovered overbilling, Plaintiffs may bring claims for overbilling in invoices issued up to four years before this lawsuit. But the statute of limitations bars Plaintiffs' claims concerning the negligent drafting of the July 13, 2010 settlement agreement in the Park Tower case; the court will grant partial summary judgment as to that claim. (2:14-cv-1953-KOB, Doc. 118 at 2; 2:14-cv-1954-KOB, Doc. 117 at 2; 2:14-cv-1955-KOB, Doc. 116 at 2).

**DONE** and **ORDERED** this 27th day of September, 2018.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE